IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TROY DELMAR JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-CV-00380 (MTT) (CHW) |
| | : | |
| Warden AHMED HOLT, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants Fagan, Phelps, and Nelson. Doc. 17. Because Plaintiff failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED** (Doc. 17), and that Plaintiff's Complaint be **DISMISSED**.

## BACKGROUND

On October 27, 2014, the Court received Plaintiff Vinson Edward Whatley's original complaint in the above-styled case pursuant to 42 U.S.C. § 1983. Plaintiff's complaint arises out of events surrounding an August 11, 2011 Application for Writ of Habeas Corpus filed in the Superior Court of Ware County, specifically related to the loss of his transcript. Doc. 1. Plaintiff, among other things, alleged that Defendants mishandled and lost his mail such that he was denied his First Amendment right of access to courts. Doc. 1. He states that because the transcript of his evidentiary hearing was not delivered to him, he was not able to respond properly to the State's response and his state habeas action was denied. Doc. 1.

On initial review under 28 U.S.C. § 1915A, the Court ordered that Plaintiff's First Amendment claim against Defendant Officer Nelson would be allowed to proceed and directed

service. Docs 5, 11. The District Court later adopted a recommendation to dismiss claims against Defendant Holt, but found that Plaintiff's access-to-courts claims against Deputy Warden Fagan and Lieutenant Phelps should go forward. Doc. 11. Defendants Fagan, Nelson, and Phelps moved to dismiss Plaintiff's complaint on April 6, 2015, and also moved to stay discovery pending resolution of Defendants' Motion to Dismiss. Docs. 17, 20. The Court granted the Motion to Stay (Doc. 21) and ordered Plaintiff to respond (Doc. 18). Plaintiff filed his response on May 28, 2015, and Defendants replied on June 15, 2015. Docs. 23, 24. Defendants argue that Plaintiff has failed to exhaust his administrative remedies.

## EXHAUSTION

Before addressing Plaintiff's claims on the merits, this Court must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as

those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit must follow the two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

**AVAILABLE ADMINISTRATIVE REMEDIES**

During the period relevant to this case, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 17-4, pp. 1–26. At step one, a prisoner wishing to file a grievance is required to file no later than 10 calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.*, p. 8. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id*. The Warden must respond within 40 days. *Id.*, p. 11. If this initial grievance is rejected, the prisoner is required to appeal within 7 calendar days. *Id.*, p. 12. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id*.

## ANALYSIS

Defendants are entitled to dismissal at step one of the *Turner* analysis. Plaintiff asserts that he began inquiring about the transcript in October 2012, when he still had not received it. After the Plaintiff contacted several people, the court reporter, Donna Cady, informed the Plaintiff on February 21, 2013, via a "voice mail message," that she had sent him a copy of the hearing transcript via "UPS certified mail" on January 9, 2013, and that an Officer Nelson at Central State Prison had signed for it at 10:34 a.m. on January 10, 2013. Doc. 1 at 13.

Plaintiff states that he twice notified Warden Holt and Deputy Warden Fagan of the missing transcript and the reason it was crucial to his timely filing a response in his state habeas case. Plaintiff did not file a grievance at this time. Plaintiff states that Holt instructed Fagan to look into the matter on February 22, 2013. Doc. 1 at 15.  On March 4, when Plaintiff informed Holt and Fagan the matter still had not been resolved, Holt instructed Fagan to "immediately" write a letter to the Ware County Superior Court "and inform the clerk that Plaintiff's transcript had not been delivered to Plaintiff due to being misplaced by prison mailroom officials." Doc. 1 at 15. Plaintiff contacted the Ware County Superior Court clerk on March 12 and was informed no such letter had arrived. Plaintiff does not allege that he filed a grievance at this point in his complaint.

On March 14, 2013, the Plaintiff contacted Defendant Phelps, the supervising officer over the mailroom, and explained the situation to him.  Phelps told the Plaintiff he would look into it.  Doc. 1 at 16.

On April 24, 2013, the Plaintiff received a copy of the proposed final order submitted by the respondent in his state habeas case. Doc. 1 at 16. However, without the evidentiary hearing transcript the Plaintiff could not "effectively draft and submit objections" to the proposed order.

On April 26, the Plaintiff received a copy of the final order denying his state habeas petition, which had been entered on April 19.

Plaintiff's complaint shows that on April 29, 2013, he submitted his first written request to his counselor, Ms. King, for a Confidential Inmate Grievance Form. Doc. 1, at 17-18. On or about May 2, 2013, Plaintiff "encountered" Ms. King on her way to her office and asked her if she had received his April 29 letter requesting a grievance form. Doc. 1, p. 18. Ms. King stated that she had not. Doc. 1, p. 18. Plaintiff further alleged that when he "attempted to verbally explain his problem, [Ms. King] indicated that she was in a hurry, and requested that [Plaintiff] write her another letter." Doc. 1, p. 18.

Plaintiff states that on May 5, 2013, Plaintiff wrote Defendant Holt a letter "regarding his administration's mishandling of failure to deliver Plaintiff's legal mail," among other concerns. Doc. 1, p. 18. On May 7, 2013, Plaintiff encountered Ms. King outside her office and asked if she had received his May 2 letter. Doc. 1, p. 18. She acknowledged that she had received the request, but requested that Plaintiff "allow her to 'see what [she] could do before [Plaintiff] file[d] a grievance.'" Doc. 1, p. 18 (alterations in original). Plaintiff states that this conversation led him to believe that Ms. King would "not only assist Plaintiff in finally obtaining a copy of the September 6, 2012 evidentiary hearing transcript, but that she could also aid him somehow in the appeal of the habeas court's final order." Doc. 1, p. 18.

On May 23, 2013, Plaintiff encountered Defendant Hold and Defendant Fagan on the sidewalk, where "through culminating frustrations, anxieties, and the [a] sense of helplessness" Plaintiff informed Defendants that he would be filing a civil action. Doc. 1, pp. 18-19. The next day, Plaintiff obtained a Confidential Offender Grievance Form from the supervising officer assigned to Plaintiff's housing unit. On that day, May 24, 2013, "Plaintiff attempted to begin the

grievance process by turning it in to his counselor." Doc. 1, p. 19. Plaintiff was met with resistance, however, from Ms. King, who refused to accept receipt of his grievance "because she did not have time to accept" it. Doc. 1, p. 19. On May 28, 2013, Plaintiff was transferred to Central State Prison, and on May 29, 2013, Plaintiff states that he filed his Grievance concerning his legal mail. Doc. 1, p. 19.

> On May 29, 2013, Plaintiff filed a grievance stating:
>
> On 5-28-13 my mother contacted the Clerk of Ware Superior Court and found out that Cady reporting services mailed habeas corpus transcripts to Central State Prison on 2-9-13 for case#11V0834. Transcripts delivered via UPS mail to the back gate and signed for by Ofc Nelson at 10:53am on 2-10-13.

Doc. 23-1, Plaintiff's Response, Attachment 1, Offender Grievance.

In analyzing Plaintiff's own version of events, his complaint is subject to dismissal at *Turner*'s first step. Plaintiff alleges that he first received notice of the lost transcript on February 21, 2013, when he received a voicemail from the Court Reporter informing him that a copy of the hearing transcript arrived at Central State Prison at approximately 10:34 A.M. on January 10, 2013 and was "received and signed for" by Officer Nelson. Doc. 1, p. 13. Nevertheless, he did not attempt to pursue the grievance process until more than two months after he first learned of the failure to deliver his transcript.

At step two of the *Turner* analysis, the Court must weigh the evidence and make findings of fact. The weight of the evidence supports a finding that Plaintiff did not fully and properly exhaust his administrative remedies. In support of their Motion to Dismiss, Defendants present the Affidavit of Mizell Davis, the Deputy Warden of Care and Treatment at Central State Prison (Doc. 17-2); Plaintiff's May 29, 2013 grievance as well as his grievance history (Doc. 17-3); and the Georgia Department of Corrections Statewide Grievance Standard Operating Procedure (Doc. 17-4). Ms. Davis stated in her affidavit that Plaintiff filed only one grievance about the

nondelivery of his mail – Grievance No. 151575 – on May 29, 2013. Doc. 17-2, Aff. of Mizell Davis, ¶ 22. She further states that Plaintiff's Grievance is still pending resolution. *Id.* ¶ 25. Ms. Davis' affidavit is corroborated by Plaintiff's Grievance history.[1] Further, evidence from Defendants shows that at step two Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies as: (1) he did not filed his grievance within ten days of date he knew or should have known of the facts underlying his grievance; and (2) the grievance is still pending.

Therefore, because the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90, 93–97 (2006), and because the Defendants have met the burden of demonstrating that Plaintiff did not file a timely grievance following the alleged June 7, 2014 incident, and also that Plaintiff did not make appropriate efforts to remedy any alleged failure to process his grievances, it is Recommended that Plaintiff's complaint be dismissed.

## CONCLUSION

Because Plaintiff failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendant's Motion be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on

---

[1] Doc. 17-3. Although the majority of Plaintiff's grievance history is illegible, neither Plaintiff's own account, nor the other records from Defendants raise any question to other grievances Plaintiff filed, and further inquiry into Plaintiff's grievance record is not necessary at this time.

appeal for failing to object. In the absence of a proper objection, however, the court may review

on appeal for plain error if necessary in the interests of justice."

      **SO RECOMMENDED**, this 17th day of July, 2015.

                s/ Charles H. Weigle
                Charles H. Weigle
                United States Magistrate Judge