**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **TROY DELMAR JOHNSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:14-cv-00380-MTT-CHW** |
| | : | |
| **Warden AHMED HOLT,** *et al.*, | : | **Proceedings Under 42 U.S.C. § 1983** |
| **Defendant.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

## REPORT AND RECOMMENDATION

Plaintiff Troy Delmar Johnson, who is presently confined at Johnson State Prison, filed a pro se civil rights complaint under 42 U.S.C. § 1983 on November 27, 2014. Doc. 1. Plaintiff's complaint arises out of events surrounding an August 11, 2011 Application for Writ of Habeas Corpus filed in the Superior Court of Ware County, specifically related to the loss of his transcript. Doc. 1. Plaintiff alleges that Defendants Fagan, Nelson, and Phelps lost his prison mail, resulting in the denial of his First Amendment right to access the courts. Because Plaintiff did not have access to his transcripts of his Habeas hearing, according to Plaintiff, he was unable to pursue his Motion to Vacate, and his state habeas action was denied. Doc. 1.

Currently before the Court are cross motions for Summary Judgment. Plaintiff seeks summary judgment, arguing that Defendants do not dispute that his mail was misplaced by Defendants. Defendants seek summary judgment arguing that (1) Plaintiff's habeas action was denied because his claims were meritless, (2) Plaintiff has failed to present evidence showing that Defendants impeded Plaintiff's ability to litigate his state habeas action, and (3) Defendants are entitled to qualified immunity. As Plaintiff does not present evidence to establish a genuine of material fact as to whether Defendants impeded his access to court, and Defendants are entitled judgment as a matter of law, it is **RECOMMENDED** that Defendant's Motion for

Summary Judgment (Doc. 63) be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**. Doc. 55.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986), and *Verbraeken v. Westinghouse Elec. Corp*., 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id*. (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla*., 630 F.3d 1346, 1353 (11th Cir. 2011). However, "unsworn statements, even from *pro se* parties, should

not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (quoting *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980)).

Where, as here, the parties have filed cross-motions for summary judgment, the standard for granting summary judgment does not differ. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The determination remains whether the parties are entitled to judgment as a matter of law based on the undisputed facts. *Id*. Each motion must be considered on its own merits, with all reasonable inferences drawn in favor of the non-moving party. *Id*.

## II. FACTS

On August 11, 2011, Plaintiff filed an Application for Writ of Habeas Corpus in the Superior Court of Ware County. Doc. 63-8, p. 3. Two evidentiary hearings were held so that Plaintiff could develop the factual record to support his claims. The first was held on January 5, 2012, (Doc. 63-3, p. 2.) and the second was held on September 6, 2012. Doc. 63-4, p. 2; Doc. 1, pp. 9 – 11. At the first hearing, Plaintiff and Plaintiff's trial counsel testified concerning Plaintiff's claims of ineffective assistance of counsel. At the second hearing, Plaintiff was allowed to call Dr. Carla Dunbar, the medical director of the Dekalb County Jail, to supplement the record with regard to his claim that he was impaired by Vicodin at the time he entered his guilty plea. Doc. 63-4. At the conclusion of the second hearing, Plaintiff was instructed to file a supporting brief or proposed order within sixty days from the date he received a copy of hearing transcripts. Doc. 63-4, p. 44 - 45. It is undisputed that Plaintiff received a copy of the first hearing transcript. Pl.'s Dep., p. 30 (Doc. 63-2, p. 10).

The record indicates that Plaintiff never received a transcript of the second hearing, at which Dr. Dunbar testified. Plaintiff made numerous efforts to obtain the transcript, by written

and telephone communication with officials in Ware County. On October 22, 2012, approximately six weeks after the second hearing, Plaintiff filed a notice with the Ware County Clerk of Court that he had not yet received transcripts of the second habeas hearing. Doc. 1, p. 12; Doc. 70-5, p. 1. Plaintiff filed a second notice on December 6, 2012, and called the clerk of court on January 2, 2013. Doc. 1, pp. 12; Doc. 70-6. The clerk advised Plaintiff that the September 6, 2012 transcripts had been filed, and that he could pay for a copy or contact "Ginger" at the South Georgia Court Reporter to request a free copy. Doc. 1, pp. 12 – 13. Plaintiff contacted "Ginger" some time later and was informed that she was not working during his plea hearing. Donna Cady of Cady Reporting Services transcribed Plaintiff's second habeas hearing. Over the next two months, Plaintiff called Ms. Cady four times. On February 21, 2013, Plaintiff received a voicemail from Ms. Cady indicating that a copy the September 6, 2012 hearing transcripts were sent to Plaintiff on January 9, 2013.[1] See Doc. 55-8, p. 1.

It is undisputed that the transcripts were sent to Central State Prison and were received by "Nelson" in the mail room on the next day. Doc. 63-5, p. 4; Doc. 63-2, p. 14. Unfortunately, the transcripts were incorrectly addressed to "Troy Delmar Jackson" instead of Troy Delmar Johnson, Plaintiff's correct name. *Id*. The UPS Shipment receipt, which is uncontested by the parties, indicates that it correctly identified Plaintiff's Georgia Department of Corrections Inmate ID number as 1000394395. Neither party has presented evidence of what came of Plaintiff's package after it was received by "Nelson." Defendant Nelson does not remember receiving the package on January 10, 2013, and does not know where the package ended up or how it may have gotten there. Doc. 63-6, p. 2. The mailroom logbooks, which would otherwise contain an entry of Plaintiff's package, have been lost.

---

[1] A copy of Grievance Number 151575 provided by Plaintiff indicates that his mother found out that the transcripts were mailed to Central State Prison after calling the Ware County Superior Court Clerk of Court on May 28, 2013. Doc. 26-1, p. 1.

The parties dispute what actions Plaintiff took to secure or locate his package over the next few months. According to Plaintiff's version of events, he first notified prison staff of the situation on February 22, 2013, when he discussed the issue with Warden Holt and Defendant Fagen. *Id*. at 13. While Defendant Fagen denies that any conversation ever took place, (Doc. 70-21, pp. 7-8) Plaintiff asserts that the Warden directed Defendant Fagen to "look into the matter and inform Plaintiff accordingly." Doc. 1, p. 15. According to Plaintiff, Defendant Fagan did not at any point follow up with Plaintiff concerning his package. Plaintiff was forced to contact the Warden and Defendant Fagan again during the first week of March. Doc. 63-2, pp. 16 – 17. When Warden Holt found out that Defendant Fagan failed to investigate the situation, Defendant Fagan was instructed to immediately draft a letter to the court informing the clerk of the situation. *Id*. It is unclear whether a letter was ever sent to the Ware County Clerk of Court. According to Plaintiff, the clerk of court told Plaintiff on March 12, 2013, that the letter was not received. Plaintiff never spoke to Defendant Fagan about the missing transcript again. *Id*. at 17.

On March 14, 2013, Plaintiff contacted Defendant Phelps, the mailroom supervising officer. *Id*. at 16. Plaintiff asserts that he also notified Defendant Phelps of his missing transcripts, but like Defendant Fagan, Defendant Phelps denies having any conversation with Plaintiff about the missing state habeas court transcripts. Doc. 63-7, p. 3.  According to Plaintiff, Defendant Phelps told Plaintiff that Phelps would assist Plaintiff with finding his transcripts, but Plaintiff is unaware of whether he took action or not. Plaintiff wrote a letter to the Ware County Superior Court on March 20, 2013, "stipulating to time frames." Doc. 63-2, p. 20. Then on April 24, 2013, Plaintiff was served with a "proposed final order" drafted by Respondent's counsel in the state habeas action.  *Id*. at 22 - 23.  Two days later, Plaintiff received a copy of the final order denying his application for writ of habeas corpus. Doc. 17.  The Order was delivered by Officer

Floyd, who discovered it discarded in the mailroom.[2] *Id.* Plaintiff filed a complaint about the handling of his mail with Defendant Phelps.

In May, Plaintiff drafted two letters of complaint to Ms. King, his grievance counselor, requesting an Inmate Grievance Form. Doc. 1, p. 18. Ms. King received the second letter but advised Plaintiff to refrain from filing a grievance until she could look into the situation. The situation was not resolved, and after confronting Defendant Fagen, Plaintiff attempted to file a grievance on May 24, 2013. According to Plaintiff, Ms. King would not accept the grievance form and he was transferred to Riverbend Correctional Facility four days later. At Riverbend, Plaintiff was able to file a grievance.

### III. DISCUSSION

Plaintiff contends that the actions of Defendants Fagan, Phelps, and Nelson resulted in the denial of his state habeas action, in violation of his First Amendment right to access the courts. All Defendants join in a Motion for Summary Judgment arguing that they are entitled to judgment as a matter of law because (1) Plaintiff has not shown a causal connection between the denial of his state habeas petition and his failure to receive the September hearing transcripts, (2) Plaintiff was not prevented from accessing the courts and litigating his state habeas petition, and (3) Plaintiff has failed to show that any Defendant's conduct was intentional rather than negligent. Because the undisputed evidence shows that Plaintiff had meaningful access to the courts and fully litigated his state habeas action, Defendants are entitled to Summary Judgment as a matter of law.

A. Access To Court Standard

---

[2] Plaintiff does not allege or show that the Order was discarded by any named Defendant and has not identified any individual who may have discarded the Order.

The Supreme Court has long recognized that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The states have a burden to ensure that this right remains unfettered and that the access be meaningful such that prisoners must have "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (quoting *Bounds*, 430 U.S. at 825). This right includes meaningful access to the postal system which is "typically the only manner in which a prisoner may communicate with the court." *Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir. 1988) (citing *Bounds*, 430 U.S. at 824-25).

In order to allege a constitutional violation based on a denial of access to the courts, Plaintiff must show actual harm or prejudice to that right. *Lewis*, 518 U.S. at 349-50. The complained of actions "must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim." *Bass v. Singletary*, 143 F.3d 1442, 1444 (11th Cir. 1998) (citing *Lewis,* 518 U.S. at 352-54). The legal claim must relate to a direct appeal, habeas petition, or civil rights action. *Id*. Plaintiff must thus provide evidence of the denial or dismissal of one such claim which resulted from the actions of prison officials, (*Id*. at 1446), and describe the underlying cause sufficiently to survive the "nonfrivolous test" and to show that "the 'arguable' nature of the underlying claim is more than hope." *Cunningham v. District Attorney's Office of Escambia County*, 592 F.3d 1237, 1273 (11th Cir. 2010) (quoting *Christopher v. Harbury*, 536 U.S. 403 (11th Cir. 2002). "[W]hen access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs." *Keaton v. Martin*, 2007 WL 841949, at *6 (M.D. Ga. 2007) (citing *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005)).

Defendants concede that Plaintiff's state court habeas petition was denied, that a copy of the September 6, 2012 hearing transcript was sent to and arrived at Central State Prison, that the transcripts were signed for by "Nelson," and that Plaintiff never received these transcripts. Defendants assert that they are nevertheless entitled to summary judgment because Plaintiff has failed to present evidence that they acted intentionally or that he suffered actual harm.

### i.   *Actual Harm*

According to Defendants, Plaintiff has failed to show actual harm from their actions because "there is no evidence that the denial of Plaintiff's habeas petition was actually caused by his purported inability to submit a proposed order." Doc. 63, p. 11. This statement appears to encompass two separate arguments: (1) that Plaintiff has not shown a causal connection between the denial of a meritorious claim in his state habeas action and the manner in which he was fettered; and (2) that Plaintiff was not actually prevented from litigating his state habeas action.

Concerning the first argument, the "actual harm" requirement of a successful access-to-courts claim requires Plaintiff to show actual harm to his constitutional right to access the courts and does not require, as Defendants assert, Plaintiff to show that his habeas action would have been successful on the merits absent Defendants' actions.  Instead, to establish actual injury, Plaintiff must merely show that he was prevented from pursuing a "non-frivolous" or "legitimate" claim.  *See Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (discussing "actual injury' as a prerequisite to an access-to-courts claim); *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) ("[A] litigant asserting an access claim must also prove that he has a colorable underlying claim for which he seeks relief.") (citing *Cristopher v. Harbury*, 536 U.S. 403 (2002)). As the Supreme Court has extensively explained, the "actual injury" requirement derives from the doctrine of standing. *Lewis*, 518 U.S. at 349. Accordingly, Defendants'

argument that they are entitled to summary judgment because Plaintiff has failed to show that his state habeas action would have been successful absent the alleged misconduct is without merit. The Court need not discuss the Defendants' assertion that the state habeas court was correct to deny Plaintiff's claims on the merits.[3]

Regardless of the ultimate merits of Plaintiff's habeas petition, Defendants are entitled to summary judgment as a matter of law because the evidence shows that Plaintiff was not denied access to the courts and did not suffer "actual harm" resulting from the Defendants actions. *Bass*, 143 F.3d at 1446 (at summary judgment stage, Plaintiff was required to put forth evidence that there was a genuine issue as to whether they suffered actual injury). Plaintiff has demonstrated through uncontested evidence that the package containing the September 6, 2012 hearing transcripts was accepted by "Nelson" at Central State Prison and never delivered to Plaintiff. This evidence is not sufficient to sustain an access to the courts claim.  Plaintiff does not contend or present evidence showing that the Central State Prison staff prevented him from filing a post-hearing brief, motions for extension of time, or taking other action in the court. In fact, it is undisputed that Plaintiff had the physical ability to access the court through the postal system and telephone as Plaintiff contacted the Court and the Clerk of Court on numerous occasions following the September 6, 2012, hearing.

Plaintiff's complaint and evidence focus on his lack of transcripts and his efforts to ascertain what happened to them, but Plaintiff's pleadings and evidence fail to show why he did not file a brief in support of his habeas action following the second hearing. During Plaintiff's deposition he was asked why he did not file a supporting brief, and he responded:

---

[3] Plaintiff has identified the cause of action, presented his claim of relief, and presented extensive argument in support. The Court assumes the claim is colorable. *See Barbour*, 471 F.3d at 1226 (assuming that inmate brought colorable underlying claim and considering the merits of the access to court claim).

A. Because I didn't have the transcript to do the whole – the whole thing – the – the brief.

Q: You had the first transcript though –

A: That's not enough.

Q: --right?

A: It's supposed to be a complete – why would I – why would I try to amend something when I can do it all at one time?

This is not about—let me say this. This is just really about receiving your privileged mail and people signing for your privileged mail and the constitutional issue with violating that situation.[4] And we can sit back and talk about – all of this criminal case, civil case, all this, but the bottom line is this: Why wasn't the mail delivered that was supposed to be delivered that they signed for?

So all this other stuff is just frivolous, but I'm answering this stuff because you came way down here . . .

Doc. 63-2, p. 23. On another occasion Plaintiff explained:

A. What I'm saying is I needed the transcripts to – what I needed the transcript to do was to enlighten the Court on why the Court should have given me favor in relief at the habeas corpus – of the habeas corpus hearing, and without having those transcripts and without having the completed transcript, I was unable to brief the Court completely on the issue of the habeas corpus hearing.

Doc. 63-2, p. 28.

Plaintiff has failed to identify any specific aspect of the second transcript which he required in order to file his supporting brief. Plaintiff has also failed to identify how his inability to cite to the record may have resulted in the state habeas court denying his petition. The second hearing was limited to the single issue of Plaintiff's use of Vicodin on the date of his guilty plea, and involved a single witness, Dr. Dunbar. Dr. Dunbar's testimony was simple and

---

[4] Although Plaintiff's deposition alludes to a potential claim based generally on the prison opening his mail, Plaintiff did not raise this issue in his complaint, amendments, or responses. It is well established in this Circuit that prison officials may open and inspect inmate mail. *Al-Amin,* 511 F.3d 1317. When the mail is properly marked attorney mail, an inmates' constitutional rights may be violated if that mail is opened outside the inmates' presence. *Id.* at 1330. Such a claim would require Plaintiff to show actual injury. Plaintiff has neither alleged nor alluded to a free speech claim based on the opening of his mail.

straightforward. On direct examination by Plaintiff, Dr. Dunbar testified that Plaintiff was given Vicodin on the date of his guilty plea. Doc. 63-4, pp. 23-24. Dr. Dunbar noted that Plaintiff had been taking the medication for approximately a year and stated his opinion that "after taking it that long a period, I'm comfortable to say that you were probably able to think on your own and able to make competent decisions" with the prescribed dosage.  Doc. 63-4, pp. 26-27. Plaintiff was present at the hearing and could have addressed the evidence presented without reference to the transcript, if necessary.

Accordingly, Plaintiff has failed to show a relationship between the denial of his habeas petition and the loss of his transcripts, and he has failed to provide evidence that Defendants' actions impeded his ability to pursue his state habeas petition. His general assertion that he needed transcripts from the second habeas hearing to file his post-hearing brief is not enough to show actual injury or prejudice. *See Logue v. Chatham County Detention Center*, 152 F. App'x. 781, 784 (11th Cir. 2005) (no actual injury where petitioner failed to assert that his petition was rejected due to missing attachment). Absent a showing that the transcripts were necessary over and above Plaintiff's conclusory statements, he has failed to demonstrate actual injury. *See Jenkins v. Walker*, 2016 WL 4099251 (S.D. Ga. 2016) (allegation that transcripts were missing or altered does not state access to court claim where Plaintiff failed to show that state court relied on alleged alterations).

Furthermore, the undisputed evidence shows that Plaintiff fully litigated his state habeas action. Plaintiff filed his state habeas claim, was free to file motions and briefs in support, and obtained a ruling on the merits.[5] Plaintiff could have filed a brief in support of his motion, but he chose not to because it would have been "incomplete" or he would have been forced to amend it

---

[5] Many of the claims Plaintiff raised in his state habeas action related to testimony from the first habeas hearing, for which Plaintiff had a copy of the transcript. Plaintiff was also present at the second hearing.

when he finally received transcripts of the second hearing. Plaintiff also could have sought an extension of time in which to file his brief. Rather than doing so, he sent a letter to the presiding judge "stipulating to the time frame" and explained that he did not want to go "six and seven and eight and nine months." Doc. 2, pp. 20-20. The habeas Petition was ruled on approximately one month after Plaintiff sent the letter, and Plaintiff secured a copy of the second hearing transcripts shortly thereafter.

The habeas court denied Plaintiff's petition on the merits. In reference to Plaintiff's claim that he was impaired at his plea hearing, the habeas court acknowledged Dr. Dunbar's testimony that Plaintiff had taken Vicodin, as prescribed, on the morning of the plea hearing, but also noted her opinion that Plaintiff "still would have been able to think on his own and make competent decisions because he had been taking the medication for over a year." Doc. 63-8, p. 11. There is nothing in the transcript of the second hearing that Plaintiff could have cited to challenge this finding.

The undisputed evidence details significant access to the Ware County Clerk of Court, the Ware County Superior Court, and several other organizations prior to and following the September 6, 2013, hearing. The evidence shows that Plaintiff was able to litigate his state habeas action by filing a complaint, participating in two hearings, receiving the transcript for the first hearing, and receiving correspondence from the state habeas court and the opposing party. The court was able to consider the petition on its merits, and nothing in the transcript of the second hearing was overlooked in the court's order. Because Plaintiff had meaningful access to the courts and fully litigated his state habeas action, and because Plaintiff has failed to show actual injury resulting from the loss of the second habeas hearing transcripts, Defendants are

12

entitled to Summary Judgment as a matter of law and Plaintiff's Motion for Summary Judgment is due to be denied.

> ii.    *Mere Negligence*

In the alternative, Defendants are entitled to summary judgment because Plaintiff has failed to show that their actions amounted to more than mere negligence. While the Eleventh Circuit does not appear to have directly addressed the issue, several circuits have determined that denial of court access claims predicated on negligent actions may not serve as a basis for liability under Section 1983. *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995); *Sims v. Landrum*, 170 F. App'x. 954 (6th Cir. 2006); *Simkins v. Bruce*, 406 F.3d 1239 (10th Cir. 2005); *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994).

The undisputed evidence shows that the package containing Plaintiff's transcripts arrived at Central State Prison on January 10, 2016, and was received at "guard" by Nelson. The package was mislabeled by the sender and was never received by Plaintiff. There is no evidence, however, concerning the whereabouts or handling of the package from the time "Nelson" received it forward. Prison policy for handling inmate mail directs that mail must initially be sorted between privileged and non-privileged items. Privileged mail is to be "logged" in a log book each day by "the Mailroom Officer." Doc. 70-3, p. 1. The logbooks from the mail room for January 10, 2013, have been lost, (Doc. 70-20, pp. 3, 5), and Defendant Nelson does not remember receiving the package or what could have happened to it. Plaintiff himself concludes that the "mailroom staff misplaced, lost, or discarded" his legal mail, Doc. 1, p. 21.

Generally, the loss of inmate mail, without more, will not sustain a Section 1983 access to courts claim. *See Sims*, 170 F. App'x at 957 (delay in processing mail showed, at most,

negligence even where Plaintiff alleged mail handler was aware of approaching filing deadline); *Hines v. Boothe*, 841 F.2d 623 (5th Cir. 1988) (allegation that two appellate briefs sent to prison were not received by Plaintiff alleged only negligence) (abrogated); *Richardson v. McDonnell*, 841 F.2d 120 (5th Cir. 1988) (lack of evidence of what happened to lost legal mail showed, at most, negligent conduct where prison mail regulations were reasonable). Plaintiff, however, asserts that Defendants Fagan and Phelps were deliberately indifferent in light of their failure to investigate his lost package.

Plaintiff's specific allegations against Defendants Fagan and Phelps focus primarily on their failure to investigate the whereabouts of the missing package. There is no evidence that any investigation would have led to the discovery of the package or even what kind of investigation could have been conducted. There is no evidence that the package ever entered the mailroom, where Defendants Fagan and Phelps allegedly have supervisory authority. Furthermore, Defendants Fagan and Phelps were, according to Plaintiff, asked to investigate the issue after the fact. *See Williams v. Glover*, 2015 WL 9812155 (M.D. Ga. Dec. 2015) ("[A] failure to investigate a single incident, of which the Warden was unaware until after-the-fact, is insufficient to establish liability.") (citing *Salvato v. Miley*, 790 F.3d 1286, 1298 (11th Cir. 2015)).

Plaintiff also appears to argue that Defendant Fagan was more than negligent in failing to "follow the second order given by Warden Holt to immediately contact" the Ware County Clerk of Court concerning the missing transcripts. Doc. 70, p. 2. Plaintiff contacted the clerk of court and the presiding judge himself, however, and Plaintiff asserts that Defendant Fagan brought Plaintiff to his office so that Plaintiff could explain the situation to Defendant Fagan's secretary. Doc. 63-2, p. 17. Defendant Fagan directed his secretary to contact the clerk's office with Plaintiff's information. *Id*. Thus, Defendant Fagan followed the Warden's instructions, according

14

to Plaintiff. With all reasonable inferences in the light most favorable to Plaintiff, Defendants have shown that no genuine issue of material fact exists as to the issue of culpability, and that their actions constituted, at most, simple negligence. Simple negligence is not sufficient to establish a constitutional deprivation.

B. Defense of Qualified Immunity

Finally, Defendants argue that even if Plaintiff showed that his constitutional rights were violated, he cannot show that the right was clearly established.  "Qualified immunity protects government officials performing discretionary functions from civil trial (and other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1991)).

The qualified immunity inquiry involves a three-step process. *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). First, the burden is on the defendant to prove that he was acting within the scope of his discretionary authority. *Id*. If the defendant meets this burden, "the burden shifts to plaintiff to show a violation of a clearly established right. *Williams v. Russo*, 636 F. App'x. 527, 531 (11th Cir. 2016) (citing *Vineyard*, 311 F.3d at 1346); *see also Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) ("Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity."). The burden has two parts: (1) "the plaintiff must allege facts, taken as true, to establish a constitutional violation," and (2) "we ask whether the right was clearly established." *Id*. The Court has discretion on which prong to address first. *Williams v.*

15

*Russo*, 636 F. App'x. 527, 532 (11th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

As discussed above, there is no genuine issue of material fact as to whether Defendants violated the constitutional right asserted by Plaintiff. Defendants are therefore entitled to qualified immunity at step one, and the Court need not consider whether a clearly established law is implicated. *See Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999) (where "plaintiff has failed to show a violation of due process, [] it necessarily follows that the defendants are entitled to summary judgment on qualified immunity grounds.") (citing *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996)).

## CONCLUSION

As set out above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 63) be **GRANTED** and it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**. (Doc. 55). Pursuant to 28 U.S.C. **§** 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

16

**SO RECOMMENDED**, this 1st day of November, 2016.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge