IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TROY DELMAR JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:14-CV-380 (MTT) |
| WARDEN AHMED HOLT, *et al.*, | ) |
| Defendants. | ) |

## ORDER

Johnson alleges that while he was incarcerated at Central State Prison the Defendants lost a UPS package addressed to him that contained a transcript he needed for a post-hearing brief in his state habeas proceeding, did not help him find it, and did not let the state habeas court know what was going on. Doc. 1 at 17, 21. The transcript was from the second of two evidentiary hearings in Johnson's state habeas proceeding, and contained the testimony of a doctor regarding Johnson's habeas claim that his guilty plea was impaired by medication. Doc. 1 at 11-13; *see also* Doc. 73 at 3.

At the screening stage, the Court allowed Johnson to prosecute First Amendment access-to-court claims against Defendants Deputy Warden Fagan, Lieutenant Phelps, and Officer Nelson. Doc. 11. After conducting extensive discovery (*see, e.g.*, Docs. 55-1 – 55-16; 63-1 – 63-8), both parties filed motions for summary judgment (Docs. 55; 63). Magistrate Judge Charles H. Weigle recommends granting the Defendants' motion summary judgment and denying Johnson's motion. Doc. 73. Johnson objects. Doc. 76.

The Court has reviewed the Recommendation and has made a de novo determination of the portions to which Johnson objects. For the reasons that follow, the Court determines that Johnson's objections are without merit. The Court accordingly **ADOPTS** the Magistrate Judge's order **as clarified** by this Order and **GRANTS** the Defendants' motion for summary judgment (Doc. 63) and **DENIES** Johnson's motion (Doc. 55).

## I. OBJECTIONS

### A.   Objections 1, 5, and 7

In Objections 1, 5, and 7, Johnson, recognizing that mere negligence is not enough to state an access-to-court claim, argues that he has demonstrated the Defendants' intentional failure to follow standard operating procedures (SOPs), bringing the case within the holding of *Simkins v. Bruce*, 406 F.3d 1239 (10th Cir. 2005). Doc. 76 at 1-3, 7-9, 10-11.

In *Simkins*, the defendant's affidavit reflected a course of deliberate conduct to hold, and not forward, mail directed to the plaintiff while he was transferred to an out-of-state prison for court proceedings. 406 F.3d at 1241-43. The defendant argued that this is what she was trained to do, even though the SOPs required that the mail be forwarded. *Id.* at 1242-43. The Tenth Circuit held that even though the defendant was doing what she was trained to do and did not understand her obligations under the SOPs, her decision to hold the defendant's mail in violation of the SOPs was "intentional conduct violating plaintiff's right of access to the courts." *Id.* at 1243.

Johnson's claim against Nelson relies on evidence that a "Nelson" signed for the transcript at the prison gate. Doc. 76 at 7-8. Johnson argues that Nelson's "signing for

and handling [sic] privileged mail when not assigned to a mailroom post" constituted "INTENTIONAL NEGLECT" of the prison's SOPs. *Id.* at 7. Johnson supports his argument that the SOPs were violated by pointing to the Defendants' interrogatory responses. *See, e.g.*, *id.* at 12. The responses seem to address SOPs for mail that was picked up from a United States Postal Service office or was otherwise already in the prison's mail system, not packages dropped off at the prison gate by a third-party carrier.[1] Construed in Johnson's favor, however, the Defendants' responses support his conclusion that Nelson violated the SOPs by signing for the UPS package.[2]

However, assuming that Nelson violated the SOPs by signing for Johnson's UPS package, Johnson's reliance on *Simkins* is still misplaced. Unlike *Simkins*, where the defendant's testimony reflected a conscious choice to not forward the plaintiff's legal mail, there is no evidence here that Nelson chose to withhold or divert Johnson's mail. There is nothing in the record supporting a reasonable inference that the package did not reach the mailroom just as it should have. *Cf.* Doc. 63-2 at 15 (Johnson testifying that he had "no idea" what happened to the package after it was signed for). Accordingly, unlike the defendant in *Simkins*, Nelson's decision to sign for the mail in

---

[1]  According to Johnson, UPS delivered the package to the prison gate. *See* Docs. 70-1 at 10; 70-12. Nelson references procedures for handling mail through USPS. *See* Doc. 70-4 at 6 ("Mail is not delivered directly to the prison. Instead, someone who is working in the mailroom *goes to the post office* and picks up the mail. (emphasis added))."

[2]  Phelps's responses are ambiguous. *See, e.g.*, Doc. 70-2 at 6 (Q: "Other than the employees trained or who worked in the mailroom could anyone else *receive or log in* privileged mail at the Central State Prison while you were the Supervisor?" A: "No. The mailroom officers were the only individuals who could *log in* privileged mail." (emphasis added)). Whether a mailroom officer was required to sign for a UPS package delivered at the gate seems to turn on whether that is encompassed by "receive or log in." Johnson "takes this to mean" that Nelson was not allowed to "possess or take receipt of mail without being assigned to a mailroom post." Doc. 70-1 at 7. According to Johnson, Nelson "should have called on the radio" so that someone in the mailroom could "come to the gate to sign and receive" his legal mail. *Id.* at 8; *see also* Doc. 76 at 8. The Defendants have not demonstrated that Johnson's inference is unreasonable.

violation of the SOPs is not connected to any actual or intended impedance of Johnson's package.

Johnson's assertions that Phelps also failed to follow the SOPs (Doc. 76 at 2-3, 5-8, 11) fail for similar reasons. Johnson's piggyback claim against Phelps—that Phelps violated the SOPs by allowing Nelson to sign for Johnson's mail (*id.* at 2-3, 7-8, 11)—fails because, even if Phelps allowed Nelson to sign for the mail in violation of the SOPs, there is no evidence connecting this to any interference with the delivery of Johnson's mail, as explained above.

Johnson attempts to demonstrate that Phelps did not follow other SOPs in regard to the UPS package by arguing that if the SOPs had been followed, he would have gotten the transcript or it would have been returned to the sender as undeliverable. *See, e.g.*, *id.* at 2, 5, 7-8. Because Johnson did not receive the package and it was not returned to the sender, it is reasonable to conclude that someone in the prison did not comply with the SOPs. Indeed, the evidence may even support an inference the failure to comply with the SOPs was an intentional obstruction of the package's delivery. *See* Docs. 63-2 at 20; 70-1 at 8; 76 at 8. However, the Court is unaware of any law relieving Johnson of the burden to show that this "someone" was Phelps. Johnson has failed to demonstrate that Phelps ever made any decision regarding the package, let alone that he was solely responsible for the package. Accordingly, Johnson cannot demonstrate that Phelps did not follow the SOPs regarding the package by simply showing that, somewhere along the way, the SOPs were not followed. The Court understands the

frustration Johnson must feel that his claim fails simply because he, even with the benefit of discovery, is unable to determine who this "someone" is.[3] But that is the law.

**B.     Objection 6**

Johnson argues in Objection 6 that Warden Holt told Fagan to "[i]mmediately contact and draft a letter to" the state habeas court about the lost transcripts on two occasions, but Fagan still neglected to "sign a letter to be sent off to" the habeas court. Doc. 76 at 9-10. However, according to Johnson's deposition, Fagan, on Holt's second instruction, brought Johnson to his office and instructed a subordinate to take down Johnson's information, draft a letter, and get into contact with the habeas court. Doc. 63-2 at 17. Johnson assumes that no letter was ever sent. *Id.* He makes this admitted "assumption" because he sent a letter to the habeas court to find out if they had received a letter from Fagan, but never heard back from the habeas court. *Id.* This is not enough to raise a genuine issue of fact whether Fagan sent the letter to the habeas court. Accordingly, Johnson has not supported his argument that Fagan neglected to "sign a letter to be sent off to" the habeas court.

**C.     Objections 3 & 4**

Objections 3 & 4 relate to the Magistrate Judge's conclusion that Johnson failed to demonstrate actual harm. Doc. 76 at 5-7. Johnson's objection equates actual harm to his being "impeded [f]rom litigating his habeas civil case due to the [i]ntentional neglect, misconduct and the do it how we want to attitude of" the Defendants. *Id.* at 5. Johnson simply points to the importance of being able to file a post-hearing brief and the general importance of the hearing transcript to this brief. *Id.* at 6-7. Such assertions

---

[3] Johnson's arguments would make sense in the context of vicarious supervisory or institutional liability. But the Court is unaware of any basis for such a claim and Johnson has not made such a claim.

make sense generally, but Johnson ignores why, under these particular circumstances, the Magistrate Judge found no actual harm.

The Magistrate Judge found no actual harm for the following reasons: (1) with the sole exception of the post-hearing brief at issue, Johnson fully participated in his habeas action; (2) Johnson was present for both of his habeas hearings and had the transcript of the first hearing, so he could have filed a supporting brief (though missing record citations for the second hearing); (3) Johnson was in communication with the habeas court, but instead of seeking an extension of time to obtain the transcript, wrote a letter to the habeas judge pressing for a ruling without mentioning the transcript or post-hearing brief;[4] and (4) the habeas judge, though without the benefit of Johnson's post-hearing brief, considered and rejected the merits of Johnson's impairment argument. *Id.* at 11-12.

The Court agrees that Johnson has not demonstrated actual harm. *Cf. Logue v. Chatham Cty. Det. Ctr.*, 152 F. App'x 781, 784 (11th Cir. 2005).[5]

**D.    Objection 2**

In Objection 2, Johnson argues the Court's screening Order—stating that Johnson "has plausibly alleged a non-frivolous underlying claim and actual injury"

---

[4]  The Magistrate Judge's record citation for this proposition appears incorrect. In the Court's view, the correct citation is Doc. 63-2 at 21.

[5]  Johnson's attempt to distinguish *Logue*, as addressing "mere attachments," not official transcripts (Doc. 76 at 6), is unpersuasive. In *Logue*, the plaintiff "sued [members of the prison system] based on the denial of [the plaintiff's] requests for multiple photocopies of supporting exhibits, including lengthy transcripts, for his use in an unrelated habeas corpus proceeding." *Logue*, 152 F. App'x at 782. *Logue* supports the proposition that the plaintiff must at least show some causal connection between being deprived of the documents at issue and the outcome in the habeas court. *See id.* at 784 ("Here, [the plaintiff] did not assert that the [state] court rejected his habeas petition because of the missing attachments and, thus, we discern no actual injury giving rise to a violation of his access to the courts."). Though deprivation of the transcripts of an underlying hearing would generally support this connection, the Court agrees with the Magistrate Judge that under these facts, that general inference is insufficient here.

against Fagan, Nelson, and Phelps—undermines the Magistrate Judge's conclusion that Johnson's claims do not survive summary judgment.  *See* Docs. 11 at 5; 76 at 3. This objection misunderstands the difference in the procedural context.

In its screening order, the Court was solely considering whether Johnson's allegations, if true, state a recognized legal claim.  *See* 28 U.S.C. § 1915A; *see also* Doc. 5 at 2 ("When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must accept all factual allegations in the complaint as true.").  But summary judgment is much different.  As the Court explained to Johnson in its *Notice of Summary Judgment Motion* (Doc. 65), he was required to support his claims factually.  *See* Doc. 65; *see also* Fed. R. Civ. P. 56(c).  Summary judgment is appropriate because Johnson has failed to do so.

## II.  CONCLUSION

The Recommendation (Doc. 73) is accordingly **ADOPTED as clarified hereby**. The Court **GRANTS** the Defendants' motion for summary judgment against Johnson (Doc. 63) and **DENIES** Johnson's motion for summary judgment (Doc. 55).

**SO ORDERED,** this 2nd day of March, 2017.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
